# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RYAN JOE SCHAFFER and<br>RONNIE SCHAFFER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  4:15-cv-3207 |
| LAWRENCE BRUCE SMITH and<br>SOUTHLAND DRYWALL, LLC, | ) ) ) ) | |
| Defendants. | ) | Jury Demanded |

## PLAINTIFFS' ORIGINAL COMPLAINT-JURY DEMANDED

Ryan Joe Schaffer ("Ryan Schaffer") and Ronnie Schaffer, Plaintiffs, complain of Lawrence Bruce Smith ("Smith") and Southland Drywall, LLC, as Defendants, and for cause of action state the following.

## PARTIES

1.Ryan Joe Schaffer, Plaintiff, is a citizen and individual resident of the State of Montana with residence and principal place of business in Powderville, Montana.

2.Ronnie Schaffer, Plaintiff, is a citizen and individual resident of the State of Montana with residence and principal place of business in Hammond, Montana.

3.Lawrence Bruce Smith, Defendant, is a citizen of the State of Texas and an individual resident of The Woodlands, Montgomery County, Texas, and may be served with process either at his residence at 50 South Vesper Bend Circle, The Woodlands, Montgomery County, Texas 77302 or at his place of business, Southland Drywall, LLC, 24900 Pitkin Road, Suite 320, Spring, Harris County, Texas 77386-1972.

**PLAINTIFFS' ORIGINAL COMPLAINT-JURY DEMANDED - PAGE 1**

4.     Southland Drywall, LLC, is, on information and belief, a Texas limited liability company, with principal offices and place of business at 24900 Pitkin Road, Suite 320, Spring, Harris County, Texas 77386-1972.  Southland Drywall is a citizen of the State of Texas.

## JURISDICTION AND VENUE

5.     This Court has subject matter question jurisdiction of this matter, pursuant to 28 U.S.C. §1332, because there is complete diversity of citizenship between Plaintiffs and Defendants, and the matter in controversy exceeds to the sum of $75,000.00, exclusive of interest and costs.

## BACKGROUND FACTS

6.     Ronnie Schaffer and son, Ryan Schaffer, are ranchers in the State of Montana who raise cattle and horses as their business.  They have had extensive experience in the quarter horse business and have developed a national reputation for breeding quarter horses and selling properly trained cutting horses throughout the United States.

7.     Quarter horses with proper blood lines are registered with the American Quarter Horse Association in Amarillo, Texas, and are highly valued based upon their pedigrees, and history of winning awards at shows.  Quarter horses are often trained as cutting horses, which requires extensive training over a period of time to develop the necessary skills.  A well trained cutting horse can command a significant sales price.  There is a national market for quarter horses and cutting horses, and many breeders and stallions with excellent blood lines are well known among horsemen.

8.     In late 2014,  Plaintiffs were attempting to sell a number of their prized Quarter Horses which were being listed for sale.   Ryan Schaffer was contacted by Defendant Bruce Smith in late 2014, who claimed to be highly successful in the drywall industry, and who claimed to have a large ranch capable of handling a substantial number of horses.  He claimed that he had familiarity with quarter horses and cutting horses and indicated very serious interest in the horses which

**PLAINTIFFS' ORIGINAL COMPLAINT-JURY DEMANDED - PAGE 2**

Plaintiffs had for sale. He spoke in grandiose terms of his plans to develop a nationally known ranch and even to establish a stallion station in Gainesville, Texas, where many nationally known stallions were bred. Ryan Schaffer even purchased a nationally recognized stallion named Freckles Doctor Jay to facilitate Smith's major plans for developing a breeding program.

9. Ryan Schaffer transported some of the horses to a ranch owned by Ronnie Schaffer in Oklahoma where he was holding the horses. Smith picked up one load of fifteen (15) horses in one trip from the Oklahoma ranch. Ryan Schaffer also delivered five horses, including Freckles Doctor Jay and a pregnant mare about to give birth to a foal, to Smith at a ranch that Smith claimed was his, known as the Next to Heaven Ranch, located in Leon County, Texas. Smith then picked up another nine (9) horses in another trip to the Oklahoma ranch. Smith stated that he was pleased with the horses and accepted delivery of them. Smith also purchased fourteen (14) horses from Ronnie Schaffer, which were also delivered to Smith by Ryan Schaffer, and accepted by Smith. The horses that Smith agreed to purchase from Plaintiffs are as follows:

**Horses Purchased from Ryan Schaffer:**

1. Peppy Playin Fancy, 2004, Black Mare #4556947, by Playdox
2. Haidas Her Choice, 2006, Bay Mare #4899694, by Haidas Little Pep
3. Lenas Red Ruby, 2006, Sorrel Mare #4849811, by Cats Red Feather
4. Bri Mis Holly Dunit, 2006, Dun Mare #4805604, by Freckles Fancy Dunit
5. Bet Z Wood, 2006, Red Roan Mare #4949555, by Bet On Me 498
6. MP Shiner Blue, 2007, Blue Roan Mare #5020991, by Shiners Charcoal
7. Wee Little Bet, 2007, Red Roan Mare #5077444, by Bet On Me 498
8. Kitty Cat Merada, 2007, Sorrel Mare #5094458, by Cats Merada
9. Imajean, 2008, Sorrel Mare #5104511, by Blaze Phazed

**PLAINTIFFS' ORIGINAL COMPLAINT-JURY DEMANDED - PAGE 3**

10. Taris Snackbox, 2002, Bay Mare # 4371764, by Snackbox

11. Hickory Little Miss, 2003, Sorrel Mare #4438612, by Smart Little Jerry

12. Pure Moxie, 2005, Palomino Mare #4620830, by Blaze Phazed

13. TT Dun It Cuttin, 2006, Dun Mare #4826268, by Zan It

14. Im A Cowboy Baroness, 2009, Red Roan Mare #5254050, by The Cowboy Cadillac

15. MPAwesome Opposum, 2010, Blue Roan Mare #5329027, by Miss N Command

16. Special Merchandice, 2013, Sorrel Mare #5572993, by Cranberry Meradan

17. Destiny Meradan, 2014, Bay Mare #625166, by Pepto Meradan

18. Luscious Meradan, 2014, Bay Mare #5625162, by Pepto Meradan

19. Little Cat N Boon, 2008, Red Roan Stallion #5087652, by Boonlight Dancer

20. Ole Shooter Dun It, 2008, Dun Stallion #X0675117, by Toms Nino Amarillo

21. Freckles Doctor Jay, 1992, Bay Stallion #3077596, by Freckles Playboy

22. PH Simons Pretty Gal, 2008, Buckskin Mare #5141176, by Shining Simon

23. Hoochiecat, 2010, Sorrel Mare #5289095, by Little Freckles Cat

24. Hoochiecat Foal, 2015, by Sweetnlous Gunpowder

25. Dual Quixote Jackie, 2011, Sorrel Mare #5534677, by Cats Quixote Jack

26. Have a Ichie Cat, 2012, Sorrel Mare #5576538, by Cat Ichi

27. Pepto Meradan, 2007, Red Roan Stallion #4916152 by Peptoboonsmal

**Horses Purchased from Ronnie Schaffer:**

1. Mary Go Around, 2001, Sorrel Mare #4065152, by Imperial Irish Pride

2. Sonadoras, 2001, Sorrel Mare, #4076560, by Imperial Irish Pride

       3.       Classical Texas, 2004, Chestnut Mare, #4501595, by Totally Classical

       4.       Angel Dell, 2013, Sorrel Mare, #5584327, by Cranberry Meradan

       5.       By Way of Knockout, 2014, Sorrel Mare #5627163, by Little Cat N Boon

       6.       MP Who My Daddy, 2001, Buckskin Mare #4928054, by Bueno Fritzi Nic

       7.       Shes Got the Hots, 2002, Bay Mare #4296710, by Hot Impulse

       8.       CLT Bandito Approval, 2002, Sorrel Mare, #4230298, by Totally Approved

       9.       Silky River Gal, 2003, Bay Roan Mare #4453630, by Ole River Boat

       10.      Nu Sugar N Chex, 2006, Sorrel Mare #4810998, by Nu Bay Chexs

       11.      MP Bueno Charcoal, 2007, Brown Mare #5051785, by Shiners Charcoal

       12.      Bucketful of Cash, 2011, Bay Mare #5427592, by Miss N Command

       13.      Unleaveable, 2011, Bay Mare #5427625, by Miss N Command

       14.      Watch Two Id Stan, 2005, Bay Roan gelding #4695598, by Bartender Watch Joe

       10.     As an initial payment on the horses purchased from Ryan Schaffer, Defendant Smith delivered a check in the amount of $25,000.00 written on the account of Defendant Southland Drywall, a true and correct copy of which is attached hereto. Ryan Schaffer utilized such payment to purchase a pickup truck from a third-party automobile dealer by signing the check over to him.

       11.     Payment of Defendants' $25,000.00 check was refused by Defendants' bank, with Smith claiming all sorts of excuses, including but not limited to blaming the "Feds" for freezing his funds, and the bank. Despite numerous urgent demands made both by Ryan Schaffer and by the innocent third-party automobile dealer, Defendant has never made the bounced check good and has never paid the amounts owed to Plaintiffs for the horses purchased. The bounced check has caused Ryan Schaffer personal embarrassment and expense

12. Smith made small payments to Ryan Schaffer and to Ronnie Schaffer for the horses purchased, but still owes to Ryan Schaffer for the horses purchased from him the amount of $81,500.00 after initial payments totalling $3,500.00, and owes to Ronnie Schaffer $11,250.00 after one payment of $1,500.00.

13. One of the horses sold by Ryan Schaffer to Defendant was Freckles Doctor Jay, a nationally recognized quarter horse stallion whose bloodlines and show history made him extremely valuable, and who commanded a very significant stud fee. Although Defendant Smith had agreed to purchase Freckles Doctor Jay, for reasons unknown to Plaintiffs, while Freckles Doctor Jay was in the possession and control of Smith, he was not properly cared for and, as a result he allegedly died under mysterious circumstances. After the horse died, Smith sought to disclaim responsibility for payment and began making excuses, claiming that he had never agreed actually to purchase the animal.

14. Plaintiffs have repeatedly made demand upon Defendants for payment, and payment has been refused. Plaintiffs are extremely reluctant to reclaim possession of their horses despite nonpayment because of uncertainty concerning the heath and well being of the animals which have been left in the care of someone who clearly is not qualified or capable of properly caring for valuable horses with extremely valuable bloodlines. Plaintiffs are justifiably concerned about the health and well being of the remaining animals, so long as they are in Defendant Smith's care and custody.

15. Plaintiffs have made presentment of their claims both verbally and in writing on numerous occasions, and Defendants have failed and refused to pay as agreed to between the parties.

16. Plaintiffs have complied with all conditions precedent to the bringing of this action.

**PLAINTIFFS' ORIGINAL COMPLAINT-JURY DEMANDED - PAGE 6**

## COUNT I.

## BREACH OF CONTRACT

17.     Plaintiffs incorporate the allegations of paragraphs 1 through 16 above as if the same were fully set forth herein.

18.     This is a cause of action for breach of contract.  The parties had agreed to a sale by Plaintiffs to Defendant Smith of the horses named above for the prices set forth in paragraph 10 above, and Defendant Smith has failed and refused to pay for the same despite numerous previous demands.  Further, Defendant Southland Drywall is liable on its check in the amount of $25,000.00.

19.     The sales agreement between Plaintiffs and Defendant Smith was not in any sense "conditional."  Plaintiffs delivered certain of the horses into the care and custody of Defendant on the express agreement and understanding that Defendant had agreed to purchase the same, and have held the remaining horses in Montana, caring for them at Plaintiffs' expense and turning down prospective buyers.  By accepting delivery of such horses, Defendant assumed full responsibility for their care, feeding, and maintenance and assumed all risks associated therewith.  If Freckles Doctor Jay did in fact perish while under the care and custody of Defendant Smith, such Defendant is fully chargeable with responsibility therefor, and cannot escape liability for payment of such purchase due to his own negligence and lack of care.

20.     In addition to nonpayment of the total sum of $92,750.00, for which Plaintiffs demand judgment of and from Defendants, Plaintiffs have suffered additional damages due to the hot check received from Defendants causing damages to the credit and business reputation of Plaintiff, Ryan Schaffer, and additional expenses for the care and feeding of the remaining horses being held in Montana awaiting payment from Smith, for which judgment is hereby demanded..

21.     Plaintiffs are further entitled to recovery of consequential damages, and prejudgment interest to the maximum extent provided by law, for which they demand judgment.

22.     Because this is a cause of action for breach of contract, Plaintiffs are entitled, pursuant to §38.002 of the Texas Civil Practice and Remedies Code, to recovery of their reasonable and necessary attorneys' fees for all actions taken in the District Court, and all legal proceedings before the Court of Appeals and Supreme Court, for which they demand recovery.

WHEREFORE, Plaintiffs, Ryan Joe Schaffer and Ronnie Schaffer, pray that summons be issued and that Defendants be served and required to appear and answer herein and that, upon final judgment, Plaintiffs recover of and from Defendants their damages for breach of contract in the amount of $92,750.00, plus consequential damages, reasonable and necessary attorneys' fees in all actions before the District Court, Court of Appeals, and the Supreme Court, plus prejudgment interest to the maximum extent provided for by law and such other and further relief in law or in equity to which they may be entitled.

Dated: October 30, 2015.

Respectfully Submitted,

Law Offices of
LIPPE & ASSOCIATES

/s/ Emil Lippe, Jr.
Emil Lippe Jr.
Texas State Bar No. 12398300
Southern District ID No. 4230
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas 75201
Tel. (214) 855-1850
Fax  (214) 720-6074
Email: emil@texaslaw.com

ATTORNEY FOR PLAINTIFFS

**PLAINTIFFS' ORIGINAL COMPLAINT-JURY DEMANDED - PAGE 8**